# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE EDWARD BAKER, JR., <br><br> Plaintiff, <br><br> vs. <br><br> MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | CASE NO. 10cv1276 LAB (NLS) <br><br> **REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. Nos. 14 & 17.] |

Willie Edward Baker Jr., (Plaintiff), brings this action under the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's (Defendant or Commissioner) final decision denying his claim for supplemental security income (SSI) benefits. This case was referred for a report and recommendation on the parties' cross motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After considering the moving papers, the administrative record and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand [Doc. No. 14] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 17] be **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on November 7, 2008, alleging disability due to asthma, back problems, arthritis of the spine, several other health problems, post traumatic stress

1  disorder (PTSD), and heart problems. (Administrative Record (AR) at 259.) Plaintiff alleged his
2  conditions first interfered with his ability to work in 2001 but that he had become unable to work on
3  March 22, 1998. (AR at 260.) The Commissioner denied Plaintiff's application for benefits at both
4  the initial and reconsideration levels. (AR at 63-67, 68-72.) An Administrative Law Judge (ALJ) held
5  a hearing on January 5, 2010. (AR at 8.) Plaintiff and a vocational expert, Mark Remas, attended the
6  hearing. (AR at 8.) Based on the testimony and documentary evidence, on January 26, 2010, the ALJ
7  issued a decision denying Plaintiff's application for benefits. (AR at 5-19.) Plaintiff filed an
8  administrative appeal, but the Appeals Council declined to review the ALJ's decision. (AR at 1-4.)
9  Plaintiff reapplied for SSI benefits, and was approved effective June 30, 2010. Plaintiff has filed this
10 action under 42 U.S.C. § 405(g).

## RELEVANT FACTS

**Background**

Plaintiff was born on October 22, 1955. (AR at 17.) He has at least a high school education. (AR at 17.) Plaintiff has spent a total of eight years in jail and prison, the last period beginning in January 2008, through to October, 2008, for a parole violation for failing to follow sex offender registration requirements. (AR at 14.) Plaintiff has experience as a pool service provider but has not worked since 2001. (AR at 10, 17.) At that time he worked 25 hours a week but had to stop after six months due to back pain and asthma. (AR at 51.) Plaintiff was receiving benefits prior to his last period of incarceration but after his release he was required to re-submit his application.

**Medical Evidence**

**A.     Bryan Abramowitz, M.D., Treating Physician (2003-2009)**

In a Medical Source Statement, submitted on December 28, 2009, Dr. Abramowitz stated the following about Plaintiff's ability to do work-related activities on a day-to-day basis: (1) Plaintiff has a lifting or carrying capacity of less than 10 pounds due to severe chronic obstructive pulmonary disease (COPD) that necessitates oxygen use; (2) Plaintiff's ability to stand or walk with normal breaks is less than two hours due to his oxygen dependence, severe COPD and osteoarthritis; (3) Plaintiff has to use a cane for assistance; (4) Plaintiff's ability to sit is 2 hours, and he needs to change positions every 15 minutes, due to severe pain secondary to osteoarthritis, lumbar radiculopathy, and

degenerative disk disease; (5) while Plaintiff has unlimited seeing, hearing, and speaking, he may never climb, balance, stoop, kneel, crouch, or crawl and he has less than five minutes ability in gross manipulation and less than 30 minutes in fine manipulation; and (6) Plaintiff has every kind of environmental restriction outlined on the medical statement form regarding heights, moving machinery, temperature extremes, chemicals, dust, and "other." (AR at 636-38.)

**B.    Sean Evans, M.D., Treating Physician, UCSD Medical Center (2006-2009)**

Dr. Evans submitted a letter on July 9, 2009, stating that Plaintiff had suffered disabling severe, chronic back pain for the last 10 years. He further stated Plaintiff has "electrophysiologically documented, chronic, cervical and lumbar radiculopathy as well as entrapment neuropathies in his arms, all of which contribute to severe pain. . .. I would recommend continuation of his disability if at all possible." (AR at 657.)

**C.    Steven Tess, Ph. D., Treating Psychologist (1990-2009)**

Dr. Tess submitted a Mental Disorder Questionnaire Form in which he stated he had treated Plaintiff since October 1990 when Plaintiff was originally in need of therapy for alcohol abuse, parenting difficulties, relationship problems, anger/stress management and depression. (AR at 488.) Dr. Tess noted that Plaintiff had been both sexually and physically abused as a child, had gone through several marriages and divorces, and had been in and out of jail/prison. (AR at 489.) Although Plaintiff no longer had an alcohol problem, Dr. Tess stated Plaintiff had periodically smoked marijuana or used crystal meth. (AR at 489.) Dr. Tess further stated that Plaintiff becomes stressed and agitated when demands are put on him and often suffers from insomnia, depression, low energy, panic attacks, inability to focus on tasks, paranoia, and impulsiveness. (AR at 489-90.) Dr. Tess's diagnoses of Plaintiff were Dysthymic Disorder, Generalized Anxiety Disorder, and Post-traumatic Stress Disorder. (AR at 492.) In Dr. Tess's opinion, Plaintiff can undertake daily activities reasonably well but that Plaintiff would have a very difficult time adapting to and being successful in any work environment due both to his mental and physical problems. (AR at 490-91.)

**D.    Phong Dao, M.D., Seagate Medical Group, Examining Physician (2009)**

Following a physical examination of Plaintiff, Dr. Dao submitted a Complete Internal Medicine Evaluation, dated February 3, 2009, in which Plaintiff was diagnosed with COPD,

hypertension, bilateral carpal tunnel syndrome, and low back pain, likely due to degenerative join disease. (AR at 417.) Dr. Dao concluded that Plaintiff: (1) can lift or carry, push or pull 20 pounds occasionally and 10 pounds frequently; (2) can stand or walk for up to six hours in an 8-hour workday; (3) can sit for up to six hours in an 8-hour workday; (4) may only occasionally climb, stoop, kneel, and crouch; and (5) has no manipulative, visual, communicative or environmental limitations. (*Id*.)

**E.    Gregory Nicholson, M.D., Seagate Medical Group, Examining Psychiatrist (2009)**

Dr. Nicholson submitted a Comprehensive Psychiatric Evaluation, dated February 6, 2009, in which he diagnosed Plaintiff as having Anxiety Disorder, Depressive Disorder, Alcohol Dependence, in remission, and Methamphetamine Dependence, in remission. (AR at 428.) Dr. Nicholson stated Plaintiff was able to: understand, remember, and carry out simple one or two-step job instructions; carry out detailed and complex instructions; accept instructions from supervisors; and perform work activities without special supervision. (AR at 429.) Dr. Nicholson further stated Plaintiff was limited in: relating to and interacting with co-workers and the public; maintaining concentration and attention, persistence and pace; associating with day-to-day work activity, including attendance and safety; and maintaining regular attendance and performing work activities on a consistent basis. (*Id*.)

**F.    G. Taylor-Holmes, M.D.; George Locke, M.D.; H. Amado, M.D. & K. Gregg, M.D., Non-examining Consultants for Social Security Administration**

On February 19, 2009, Dr. Taylor-Holmes submitted a physical Residual Functional Capacity (RFC) Assessment, which adopted Dr. Dao's conclusions. Dr. Locke affirmed Dr. Taylor-Holmes' decision on June 8, 2009. (AR at 494.) Dr. H. Amado submitted a Psychiatric Review, concluding Plaintiff is capable of performing non-public simple repetitive tasks. (AR at 444-55.) On June 12, 2009, Dr. Gregg affirmed Dr. Amado's decision. (AR at 496.)

## ALJ HEARING AND DECISION

**Plaintiff's Testimony**

At the hearing, Plaintiff stated he could not work due to several health issues. (AR at 46.) More specifically, Plaintiff complained of constant pain and difficulty in breathing. (AR at 46-47.) Plaintiff stated he could only leave his house two to three times a week and that he spent most days lying down. (AR at 46.) Plaintiff reported being on Valium, Percocet and Vicodin for pain in his

neck, arms, back and wrists. (AR at 47 & 50.) He also complained of numbness due to neuropathy which makes holding on to things with his hands difficult. (*Id*.) Plaintiff stated he had been using an oxygen tank continuously since December, 2009. (AR at 48.) Plaintiff also reported frequent bouts with pneumonia and bronchitis that necessitated hospital treatment. (*Id*.)

Plaintiff testified that he lives in a motel with his wife who does most of the household chores since he is only minimally capable of helping. (AR at 49.) Plaintiff stated he was receiving psychiatric treatment for post traumatic stress disorder due to domestic violence he experienced in the parental home as a child. (AR at 50.) He reported difficulty with sleeping and short term memory. (*Id*.)

Upon questioning by the Administrative Law Judge (ALJ), Plaintiff stated he was no longer smoking marijuana and that he had cut down his regular smoking to seven cigarettes a day. (AR at 52.)

**The Written Decision.**

The ALJ issued a written opinion denying Plaintiff's claim for benefits. (AR at 8-19.) He first concluded that Plaintiff had not engaged in substantial gainful activity since October 27, 2008, the date the application was filed. (AR at 10.) He found Plaintiff had the following severe impairments: chronic pulmonary obstructive disease (COPD), history of cardiac infarction, bilateral carpal tunnel syndrome, lumbar degenerative disc disease, depression not otherwise specified, and anxiety not otherwise specified. (*Id*.) The ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the Code of Federal Regulations. (AR at 11.)

Citing to the medical reports, the ALJ found that although Plaintiff could not perform any past relevant work, he was able to perform light unskilled work. (AR at 17 & 13.) The ALJ found Plaintiff was able to maintain concentration and attention for simple repetitive work, could relate and interact with the public, and could tolerate moderate job related stress. (AR at 13.) The ALJ concluded that considering Plaintiff's age, education, work experience and residual functional capacity, a significant number of jobs exist within the national economy that he can perform, and that he has not been under a "disability" as defined in the Social Security Act (SSA) from the date of his application. (AR at 19.)

# LEGAL STANDARDS

**Evaluating Social Security Disability Claims.**

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. §423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).

First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(I). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairment is severe, the ALJ must then determine whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant cannot perform past relevant work, the ALJ–at step five–must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

**Substantial Evidence.**

The SSA provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Id., Batson*, 359 F.3d at 1193. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When

the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 259 F.3d at 1193. Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision that the court reviews. *Id.* at 1193 n.1.

## DISCUSSION

Plaintiff argues: (1) the ALJ failed to state specific and legitimate reasons for rejecting the opinion of Plaintiff's treating physicians that Plaintiff was incapable of performing any substantial gainful activity; (2) the ALJ abused his discretion in concluding Plaintiff's smoking was material to his condition; (3) the ALJ failed to state specific, clear and convincing reasons for rejecting Plaintiff's testimony; (4) the ALJ failed to give sufficient weight to Plaintiff's wife's lay testimony; and (5) the ALJ failed to consider the effects of Plaintiff's bilateral carpal tunnel syndrome and bilateral ulnar neuropathy.

The ALJ concluded that Plaintiff was able to perform light unskilled work. Pursuant to SSR 83-10, light work is "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" wherein sitting may occur intermittently. *See* 20 C.F.R. § 416.967(b). If there is evidence in the record to support this conclusion, and the ALJ applied the correct legal standards, this Court must affirm the ALJ's decision. It is not this Court's job to reinterpret or re-evaluate the evidence however much a re-evaluation may reasonably result in a favorable outcome for Plaintiff. See *Batson*, 259 F.3d at 1193 (where evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld).

The Court finds the ALJ's decision was based on substantial evidence in the record. He reasonably relied on Dr. Dao's conclusion that Plaintiff can lift or carry, push or pull 20 pounds occasionally and 10 pounds frequently and can stand or walk for up to six hours in an 8-hour workday. (AR at 417.) The State agency reviewing physicians also concluded Plaintiff could perform light work. Although these reviewing physicians did not examine Plaintiff, their findings were based on a review of all the evidence coupled with familiarity with Social Security Rules and Regulations. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (non-examining physician's opinion may constitute substantial evidence if consistent with evidence in record).

**Plaintiff's Arguments**

(1)  Plaintiff correctly states that if an ALJ rejects a treating physician's opinion, he must state specific, legitimate reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The ALJ acknowledged that "when [a treating physician's opinion] is supported by objective medical evidence and consistent with otherwise substantial evidence of record, [it is] entitled to controlling weight." However here, the ALJ correctly noted that "statements that a claimant is 'disabled,' 'unable to work' can or cannot perform a past job, meets a listing or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein and in the Dictionary of Occupational Titles." (AR at 15.) This was a legitimate and specific reason for disregarding the treating physician's opinion. *See* 20 C.F.R. § 416.927(e); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (treating physician's opinion that his patient is disabled or unable to work is not binding with respect to ultimate determination of disability).

The ALJ also stated that Drs. Tess' and Abramowitz's opinions were based on marginal notes without citation to medical testing results or objective observations regarding Plaintiff's residual functional capacity. (*Id.*) The ALJ also noted that the doctors did not adequately consider the entire record, including the statements of collateral sources and the objective findings of other treating physicians that did not support the level of severity the doctors assigned. (*Id.*) The treating physician's opinion is not binding on the ALJ if it is conclusory, brief, or unsupported by the record as a whole. *Batson*, 359 F.3d at 1195.

The ALJ offered specific, legitimate reasons for declining to give controlling weight to Plaintiff's treating physician's opinion when determining Plaintiff's RFC. *See Batson*, 359 F.3d at 1195 (ALJ did not err in giving minimal weight to treating physician's opinion that was conclusory and unsupported by objective medical evidence); *Tonapetyan*, 242 F.3d at 1149 (ALJ properly rejected treating physician's opinion that was unsupported by rationale or treatment notes).

(2)  Plaintiff claims there was no medical evidence for the ALJ's conclusion that "[i]t is reasonable to assume that if the claimant abstained from smoking, some of his complaints of shortness of breath would be alleviated." (AR at 14.) There was medical evidence that Plaintiff suffered from

COPD, had shortness of breath and is hooked up to an oxygen tank. The record reflects that two physicians commented that if Plaintiff stopped smoking, his conditions would improve. *See* Dr. Dao (AR at 417) and Dr. Tiruviluamala (AR at 706). Under these circumstances, the ALJ's conclusion about the affect of Plaintiff's smoking was reasonable.

(3) Plaintiff argues there was no basis for the ALJ's rejection of his testimony. In deciding whether to credit a claimant's testimony about subjective symptoms or limitations, the ALJ must engage in a two-step analysis. *Batson*, 359 F.3d at 1195; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce pain or other symptoms. *Batson*, 359 F.3d at 1195; *Smolen*, 80 F.3d at 1281. If this test is satisfied, and there is no affirmative evidence that the claimant is malingering, then the ALJ must determine the credibility of the claimant's subjective complaints. In assessing the credibility of the claimant's subjective complaints, the ALJ may consider such factors as the claimant's reputation for truthfulness, any inconsistencies in the claimant's statements, and the claimant's daily activities. *Tonapetyan*, 242 F.3d at 1148; *Smolen*, 80 F.3d at 1284. The ALJ may reject the claimant's testimony about the severity of symptoms as long as he gives specific, convincing reasons for doing so. *Batson*, 359 F.3d at 1195. An ALJ must not disregard Plaintiff's testimony solely due to a lack of substantiation by objective medical evidence. *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ stated that Plaintiff's long criminal history and incarceration for sexual offense charges and for DUI and domestic violence "severely impacts the claimant's credibility which is coupled with the apparent fact that the claimant filed for disability almost immediately after being discharged from prison." (AR at 14.) The ALJ further noted that Plaintiff had admitted to certain daily activities, such as taking care of himself, doing grocery shopping, visiting friends, and maintaining his home, that provided support for part of the RFC conclusion. (AR at 14, 46 & 49.) Even though Plaintiff initially testified he could not perform "any types of duties" (AR at 46), his overall testimony and the record overall reflects his condition was not as severe. The ALJ stated , "the performance of the claimant's daily activities as described is not inconsistent with the performance of many basic work activities." *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (if claimant

engages in daily activities requiring transferrable skills to workplace, ALJ may discredit claimant's allegations upon making specific findings relating to the daily activities).

The ALJ provided clear and convincing reasons for rejecting a portion of Plaintiff's testimony. When the ALJ makes specific findings for discounting the claimant's testimony, and such findings are supported by substantial evidence in the record, the Court's role is "not to second-guess that decision." *Fair*, 882 F.2d at 604.

(4) Plaintiff next contends the ALJ failed to adequately provide a "germane" reason for discounting the lay testimony of Marilyn Crowley, Plaintiff's fiance. The ALJ stated he took Crowley's testimony regarding Plaintiff's RFC into consideration but that to the extent she opined "he could not lift, squat, bend, stand very long, reach, walk, sit, kneel or climb stairs, and could not follow spoken instructions well"this opinion did not carry any weight since Crowley is not a medical professional qualified to make these conclusions. (AR at 16.) The ALJ chose to rely on Dr. Dao's more specific medical report of the extent to which Plaintiff could perform these activities. (*Id*.) Inconsistency with medical evidence is a germane reason for discrediting lay witness testimony. *Bayliss v. Barnhard*, 427 F.3d 1211, 1218 (9th Cir. 2005).

(5) Finally, Plaintiff contends the ALJ failed to consider and determine the effects of Plaintiff's bilateral carpal tunnel syndrome and bilateral ulnar neuropathy. The objective evidence Plaintiff points to for carpal tunnel syndrome is the report of Dr. Dao. (AR at 417.) The ALJ considered Dr. Dao's report and placed great weight on Dr. Dao's assessment of Plaintiff's RFC. The ALJ acknowledged in his findings of fact that Dr. Dao had diagnosed Plaintiff with carpal tunnel. Nevertheless, Dr. Dao was of the opinion that Plaintiff could perform light work. *See Sample v. Schweiker*, 694 F.2d 639, 642-43 (9th Cir. 1982) (impairment per se not disabling; must be proof of impairment's severity resulting in disability). Thus, the ALJ's decision does not reflect a lack of consideration for the effects of Plaintiff's carpal tunnel syndrome, merely that the effects, considered within the context of Dr. Dao's report, did not prevent Plaintiff from doing light work.

Plaintiff testified to having numbness due to neuropathy. (AR at 47.) The ALJ then asked Plaintiff who was treating him for the condition and Plaintiff answered Dr. Evans. (*Id*. at 47-48.) Dr. Evans' medical report, dated June 25, 2009, notes the neuropathy but his July 2009 letter does not.

(AR at 657.) The ALJ stated he considered the report and evidence submitted by Dr. Evans as Plaintiff's treating physician. (AR at 15.) However, as to Dr. Evans' opinion that Plaintiff was disabled, the ALJ reasonabley stated this was an administrative finding without weight, not a medical opinion. (*Id.*) With regard to Dr. Evans' medical opinion, the ALJ agreed it should hold "special significance" but only on the issue of the nature and severity of an impairment. (*Id.*) The record does not reflect Plaintiff's neuropathy to be significant enough to have affected the ALJ's decision. Dr. Evans' last letter submitted to the ALJ did not mention the neuropathy and Dr. Evans' report indicates Plaintiff was not wearing the elbow pads he had been given to assist with the condition. Moreover, Dr. Dao's report notes tenderness in Plaintiff's wrists but does not give a diagnosis that would affect the RFC recommendation. (AR at 417.)

The Court **FINDS** that substantial evidence supports the ALJ's decision because he relied on relevant, documented medical evidence that a reasonable person would accept as adequate. This substantial evidence supports the ALJ's finding that Plaintiff was not totally disabled and that he was not under a "disability" as defined in the SSA. Based on this finding the Court declines to follow the utility test, as invited by Plaintiff, to determine whether to award benefits or remand the case.

## CONCLUSION

Based on the preceding discussion, this Court concludes that the ALJ's denial of benefits was supported by substantial evidence and was free of legal error. Therefore, the Court **RECOMMENDS** that Plaintiff's motion for reversal and/or remand [Doc. No. 14] be **DENIED** and that Defendant's cross motion for summary judgment [Doc. No. 17] be **GRANTED**.

This Report and Recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before *March 22, 2011*. The document should be captioned "Objections to Report and Recommendation." Any response to the objections shall be filed and served on or before *April 4, 2011*.

///
///
///

Failure to file objections within the specified time may affect the scope of review on appeal. *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: February 22, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court